UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Jaquon Keshawn Moman (2),

        Defendant.

Case No. 17-cr-266-2 (JRT/SER)

REPORT AND RECOMMENDATION

David P. Steinkamp, Esq., United States Attorney's Office, Minneapolis, Minnesota, for Plaintiff.

David Izek, Esq., Altman & Izek, Minneapolis, Minnesota for Defendant.

STEVEN E. RAU, United States Magistrate Judge

Currently before the Court is Defendant Jaquon Keshawn Moman's ("Moman") Motion to Suppress and Exclude Evidence From Any Photo Lineups ("Motion to Suppress") [Doc. No. 48]. This matter was referred for the resolution of the issues raised in Garcia's Motions pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Moman's Motion to Suppress be denied.

**I.    FACTS**

Moman stands accused of two counts of "[i]nterference with [c]ommerce by [r]obbery" and one count of "[u]sing, [c]arrying, [b]randishing and [d]ischarging a [f]irearm [d]uring and in [r]elation to" one of the alleged robberies. *See* (Superseding Indictment) [Doc. No. 28]. In particular, Moman allegedly

> unlawfully and knowingly [took] and obtain[ed] cash which was property of Metro PCS, located in Minneapolis, Minnesota, a commercial business then engaged in and affecting interstate commerce, in the presence of a victim employee, against the employee's will by means of actual and threatened force, violence, and fear of injury, immediate and future, to the employee's person . . .

> . . . .
>
> [And] unlawfully and knowingly attempt[ed] to take and obtain cash and merchandise which was the property of Verizon Wireless, located in Inver Grove Heights, Minnesota, a commercial business then engaged in and affecting interstate commerce, in the presence of a victim employee, against the employee's will by means of actual and threatened force, violence, and fear of injury, immediate and future, to the employee's person . . . .

(*Id.* at 1–2). It was during the second attempted robbery of the Verizon Wireless store where Moman allegedly "knowingly and unlawfully use[d], carr[ied], brandish[ed] and discharge[d] a firearm." (*Id.* at 2–3).

After the incidents, "surveillance camera footage from the robbery of [the] Inver Grove Heights Verizon store . . . was played by a local news station." (Gov't's Suppl. Resp. to Def.'s Pre-Trial Mots., "Gov't's Suppl. Resp.") [Doc. No. 63 at 1]. A member of the community called local police and identified Moman as one of the individuals in the footage. (*Id.*). This "led police to focus on the Defendant as a possible suspect." (*Id.*).

As part of their investigation of Moman, authorities included a photograph of Moman in two different photo arrays, each including a total six individuals. *See* (Mot. to Suppress at 2–3);[1] *see also* (Exs. 1–2) (photo arrays entered into evidence during the motions hearing before the undersigned); (Ex. List) [Doc. No. 62]. Moman was identified by witnesses to each robbery on the basis of the arrays.[2] *See* (Mot. to Suppress at 2–3).

## II.   MOTION TO SUPPRESS

---

[1]   When referencing the Motion to Suppress, CM/ECF pagination is used.

[2]   During a motions hearing before the undersigned, Moman withdrew his objection to the first photo array as being impermissibly suggestive because only some witnesses positively identified Moman as the perpetrator of the robbery using the first photo array while at least one other witness identified someone other than Moman as the perpetrator of the robbery. The Court therefore only focuses on Moman's objections to the second photo array. *See* (Mot. to Suppress at 2–3).

Moman now seeks to have the positive identification from the second photo array suppressed because he asserts the array was impermissibly suggestive. *See generally* (Mot. to Suppress). In support, Moman provides the following reasons:

> A. The only photograph with substantial tattoos on the person's neck is photo number 3;
> B. The only photograph that depicts a light skinned individual is photo number 3;
> C. The photographs show the individuals wearing white t-shirts except photo number 3, where the person is wearing an orange t-shirt;
> D. The orange t-shirt worn by the person in photo number 3 has a different color collar from the t-shirt where the other t-shirts worn by the other individuals have the same color collar as their t-shirt; [and]
> E. The background color for each photo is the same with the exception of photo number 3, where the background color is a very light gray v. gray . . . .

(*Id.* at 2). Because—according to Moman—the second photo array is impermissibly suggestive, "the Court should direct its inquiry to examining the totality of the circumstances to determine whether the suggestive procedures created a very substantial likelihood of irreparable misidentification." (*Id.*). In support of his argument that there is a very substantial likelihood of misidentification, Moman points to the fact that the photo array was reviewed by the identifying witness "some five months" after the alleged robbery, and the identifying witness's description of the individuals involved that was given "to 911 dispatch is non-specific as was his description to police the day of the robbery." (*Id.* at 3). As a result, Moman argues that anyone faced with the question "of the six photographs which one is different from the rest?" would provide the same answer: "number 3 or Mr. Moman." (*Id.*) (internal quotation marks omitted).

The Government objects to Moman's characterization of the photo array as being impermissibly suggestive. *See* (Gov't's Suppl. Resp. at 3–4). In particular, the Government argues: (1) that Moman's assertion "that only he was depicted with 'substantial tattoos' on his neck, is not supported," because "[t]he photograph of the Defendant barely shows any tattoos,

3

and they are certainly not significant"; (2) Moman's assertion "that the backgrounds of the photographs are so different as to be suggestive is also not supported" because "[a]ll of the backgrounds are gray"; Moman's assertion "that he is wearing an 'orange' t-shirt with an orange collar, is completely unsupported by the evidence"; and (3) Moman's assertion that "he is the only person depicted with a 'light' skin tone" is not supported because his "skin tone is [not] much different than all of the others depicted in the lineup." (*Id.* at 3–4).

Furthermore, the Government questions the legal significance of Moman's assertions generally. *See* (*id.* at 4). For example, with respect to Moman's assertion that the backgrounds are different, the Government argues "[e]ven if the backgrounds were very different, the Eighth Circuit has ruled that different backgrounds do not make a lineup suggestive." (*Id.*) (citing *United States v. Harris*, 636 F.3d 1023, 1026 (8th Cir. 2011)); *see also* (*id.*) (asserting "slight variations in skin tone have been ruled to be not overly suggestive in the Eighth Circuit" (citing *Harris*, 636 F.3d at 1026)).

### III. DISCUSSION

The Court concludes that Moman failed to support his burden that suppression is warranted. Nothing suggests that the photo array in question was impermissibly suggestive under established law.

#### A. Legal Standard

The Due Process Clause provides criminal defendants with "protection against the admission of evidence deriving from suggestive identification procedures." *Neil v. Biggers*, 409 U.S. 188, 196 (1972). A photo array runs afoul of the Due Process Clause "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very

substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

> Clearly established Federal law, as determined by the Supreme Court of the United States, requires a two-step inquiry into photographic arrays. The first step is to determine whether the array was impermissibly suggestive. If found so, the second inquiry is whether under the totality of the circumstances the array created a substantial risk of misidentification at trial.

*Schawitsch v. Burt*, 491 F.3d 798, 802 (8th Cir. 2007) (citation omitted).

> To determine whether a photo array creates a substantial risk of misidentification at trial, the court considers: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation.

*Id.*

### B.  Analysis

None of Moman's arguments that the photo array violated his Due Process rights are persuasive. Moman's first argument that "[t]he only photograph with substantial tattoos on the person's neck is photo number 3" is not compelling. *See* (Mot. to Suppress at 2). Critically, the tattoos in photo three are barely noticeable. Simply put, without first being informed that Moman has neck tattoos, the tattoos depicted in photograph number three are hard to discern and cannot support a finding that the photo array is impermissibly suggestive. *See* (Ex. 2); *cf. Herrod v. Norris*, No. 5:07CV00304, 2008 WL 1925188, at *5 (E.D. Ark. Apr. 30, 2008) (Young, Mag. J, as adopted by Holmes, J.) (finding that tattoos that are "not necessarily noticeable in the photo" do not lead to a conclusion that the photo array is impermissibly suggestive).

Likewise, Moman's next argument that "[t]he only photograph that depicts a light skinned individual is photo number 3" is insufficient to establish an impermissible photo array. *Cf.* (Mot. to Suppress at 2). Specifically, "'[a]lthough [Moman] was of a lighter complexion than

5

[five] of the other individuals in the array and the background lighting in his photograph was slightly different from some of the other photographs, neither of these differences [are] stark enough so as to be unduly suggestive.'" *Harris*, 636 F.3d at 1026 (quoting *United States v. Knight*, 382 Fed. App'x 905, 907 (11th Cir. 2010)).

Moman's arguments related to the coloring of the shirts in the photographs are also meritless. Moman's argument that "the photographs show the individuals wearing white t-shirts except photo number 3, where the person is wearing an orange t-shirt" is demonstrably false. *Cf.* (Mot. to Suppress at 2); *see also* (Ex. 2). The shirt in photograph number three appears white; the discoloration present in photograph number three is subtle, and is similar to the discoloration present in photograph number two. *See* (Ex. 2). If anything, the only stark coloration differences are present in photograph number five of the array, but "[w]hen there are no differences in appearance tending to isolate the **accused's** photograph, the identification procedure is not unnecessarily suggestive." *Schawitsch*, 491 F.3d at 802 (emphasis added). That is, of the six photographs in the photo array, only one—which does not depict the accused—has what looks like a different colored shirt that could arguably suggest a difference in appearance. *See* (Ex. 2). But this is insufficient to support a finding that the photo array is impermissibly suggestive. *See Schawitsch*, 491 F.3d at 802.

In addition, Moman's argument that "[t]he orange t-shirt worn by the person in photo number 3 has a different color collar from the t-shirt where the other t-shirts worn by the other individuals have the same color collar as their t-shirt" is also undermined by the photo array. *Cf.* (Mot. to Suppress at 2); *see also* (Ex. 2). In particular—in photograph number 3—the collar is mostly the same color as the shirt; only a small portion of the right side of the collar in the photograph appears to be a different color than that of the other portion of the collar and the

6

shirt. *See* (Ex. 2). This slight variation of color is too insufficient to support a finding that the photo array is impermissibly suggestive, because there is nothing to suggest that this variation would tend "to isolate the accused's photograph." *Cf. Schawitsch*, 491 F.3d at 802.

Finally, Moman's argument that "[t]he background color for each photo is the same with the exception of photo number 3, where the background color is a very light gray v. gray" is legally insignificant. Specifically, many courts have concluded that "slightly different backgrounds do not render the lineup impermissibly suggestive." *See Harris*, 636 F.3d at 1026 (citing cases). Here, the backgrounds are almost identical and the differences appear to be related to small differences in light levels and not differences in color. Again, there is nothing to suggest that these different light levels tend "to isolate the accused's photograph." *Cf. Schawitsch*, 491 F.3d at 802. As a result, the Court cannot conclude that the photo array is impermissibly suggestive on this basis. *See Harris*, 636 F.3d at 1026.

At bottom, "[Moman] does not explain why the minute variation in [shirt] color[, skin tone, and lighting] would suggest to the witnesses that [Moman] was the offender or the person the police suspected." *Id*. Importantly, the photo array includes six photographs, each person depicted in the photo array has similar hair styles, eye color—and notwithstanding Moman's arguments to the contrary—similar skin tones, shirt colors, and photographic backgrounds. *See* (Ex. 2). Furthermore, the only arguable inconsistency in the photo array is not present in the photograph of the accused, but in photograph number five. Ultimately, this Court finds "no evidence in the record that the identifying witnesses were influenced by the slight color [and light] variation[s]. As such, . . . the photographic lineup used in this case [is] not impermissibly suggestive." *See Harris*, 636 F.3d at 1026.

Because the Court concludes that the photo array is not impermissibly suggestive, it need not consider whether the array could create a substantial risk of misidentification at trial. *See Schawitsch*, 491 F.3d at 802. Consequently, the Court recommends that Moman's Motion to Suppress be denied.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Jaquon Keshawn Moman's Motion to Suppress and Exclude Evidence From Any Photo Lineups [Doc. No. 48] be **DENIED**.

Dated: April 30, 2018

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).